IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

IRON THUNDERHORSE,      §
TDCJ #624391,           §
                        §
        Plaintiff,      §
                        §
v.                      §      CIVIL ACTION NO. H-17-3530
                        §
RISSIE OWENS, et al.,   §
                        §
        Defendants.     §

## MEMORANDUM OPINION AND ORDER

Plaintiff Iron Thunderhorse (TDCJ #624391), also known as William L. Coppola, is a state inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"). Plaintiff filed a Complaint Under the Civil Rights Act, 42 U.S.C. § 1983 ("Original Complaint") (Docket Entry No. 1) and an amended version of that pleading ("Amended Complaint") (Docket Entry No. 21) in the United States District Court for the Western District of Texas, Austin Division, against the following defendants: former Chairperson of the Texas Board of Pardons and Paroles, Rissie Owens; former TDCJ Executive Director, Brad Livingston; and three parole officials (Donna Wagley, Christopher Cooper, and Candice Woodard) in their official and individual capacities. Because the events giving rise to Plaintiff's claims occurred in Houston, the Western District recently transferred the action to this court (Order, Docket Entry No. 47). There were

several motions pending in this case at the time it was transferred, including: (1) Defendants Owens, Livingston, Wagley, Woodard and Cooper's Partial Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Defendants' Partial Motion to Dismiss") (Docket Entry No. 25); (2) Plaintiff's Motion for Leave to Exceed the Page Limit (Re: Plaintiff's First Supplemental Amended Complaint) imposed by local rules in the Western District of Texas (Docket Entry No. 33); (3) Plaintiff's Motion for Substitution of Party Defendants under Rule 25(d) Federal Rules of Civil Procedure ("Plaintiff's Motion for Substitution") (Docket Entry No. 34); (4) Motion for Leave to File Plaintiff's First Supplemental, Amended Complaint (Rule 15, Fed. R. Civ. P.) ("Plaintiff's Motion for Leave") (Docket Entry No. 36); (5) two Motion[s] [by Defendants] for Protective Order from discovery (Docket Entry Nos. 37 and 38); and (6) Plaintiff's Reply to Defendants' Motion[s] for Protective Order, and His Motion to Compel Discovery with Supporting Brief and Exhibits ("Plaintiff's Response and Motion to Compel") (Docket Entry No. 42). These motions are considered below along with the parties' respective responses and the applicable law.

## I. Background

This case concerns Plaintiff's early release on parole from state prison, which requires a brief overview of his underlying criminal convictions. In 1978 Plaintiff was convicted of aggravated kidnapping in Collin County Case No. F-77-314-R and

sentenced to 99 years' imprisonment.[1]  Plaintiff also received a

20-year prison sentence following his subsequent conviction in 1978

for aggravated rape in Grayson County Case No. 30554 and another

25-year sentence in 1979 for aggravated robbery in Dallas County

Case No. F-79-3054-H.[2]  Plaintiff was released from prison in error

on the form of parole known as mandatory supervision on June 28,

1991.[3]  He was taken into custody in Harris County, but he escaped

on or about November 7, 1991.[4]  In 1992 Plaintiff was convicted of

felony escape and sentenced to 20 years' imprisonment in

Harris County Case No. 640231.[5]  Thus, Plaintiff, who had by then

legally changed his name from William L. Coppola to Iron

Thunderhorse, returned to TDCJ.[6]

On December 31, 2013, Plaintiff was released on parole under

the supervision of the TDCJ Parole Division and sent to the

Southeast Texas Transitional Center ("STTC") in Houston, Texas.[7]

While on parole, Plaintiff was subject to the highest level of

---

[1]Affidavit of Charley Valdez ("Valdez Affidavit"), Exhibit C
to Defendants' Partial Motion to Dismiss, Docket Entry No. 25-3,
p. 3.  For purposes of identification, all page numbers refer to
the pagination imprinted on each docket entry by the court's
electronic filing system, CM/ECF.

[2]Id. at 3-4.

[3]Id. at 4.

[4]Id.

[5]Id.

[6]Amended Complaint, Docket Entry No. 21, p. 4.

[7]Id. at 4-5.

supervision, the Super Intensive Supervision Program ("SISP"),
which required him to wear an ankle monitor and comply with other
restrictive SISP conditions.[8]  On an unspecified date in April of
2014 Plaintiff was transferred from STTC to a private halfway house
run by Front Runner Properties in Houston and was assigned to
District Parole Office Number 4 as his parole office.[9]  Defendant
Wagley is a supervisor at that office, where Defendants Cooper and
Woodard worked as parole officers.[10]

Plaintiff, who states that he is almost completely blind and
over 70 years old,[11] reportedly had great difficulty navigating
around Houston to attend AA/NA meetings and satisfying other
conditions of his parole, which required him to report to the
Houston Police Department to register as a sex offender.[12]
Plaintiff alleges that while he was housed at the half-way house
operated by Front Runner Properties he was forced to attend
specific AA/NA meetings that were "Christian oriented" in violation

---

[8]See Texas Board of Pardons and Paroles Report, Exhibit 21 to
Original Complaint, Docket Entry No. 1-21, pp. 3, 9 (referencing
the level of parole as "super intensive supervision" and the
conditions as "SISP"); see also Ex parte Napper, 322 S.W.3d 202,
213 (Tex. Crim. App. 2010) (describing the Super Intensive
Supervision Program as the highest level of supervision).

[9]Amended Complaint, Docket Entry No. 21, pp. 4, 6.

[10]Id. at 6.

[11]Original Complaint, Docket Entry No. 1, p. 14 (describing
himself as blind in the right eye and almost blind in his left
eye).

[12]Amended Complaint, Docket Entry No. 21, p. 6.

of the First Amendment Establishment Clause.[13] He also claims that Woodard effectively placed him on "house arrest," which prevented him from exercising his sincerely held religious beliefs as a practitioner of Native American Shamanism by smoking "sacred tobacco" outdoors and offering prayers under the "sky above."[14]

Plaintiff also claims that he was required to take the bus and that he was forced to walk in excess of 10 miles round trip to get to AA/NA meetings and other locations.[15] He claims that he developed "severe diabetic foot ulcers" and was told by a health care provider that he could need "amputations."[16] He was prescribed medication in the form of a diuretic that required him to urinate about "once an hour," but he was reportedly prohibited by his parole officer (Woodard) from using public restrooms.[17] In addition, he was required to attend sex offender classes, but claims he could not participate because of his visual impairment and was not afforded any accommodation.[18] Cooper and Woodard also disregarded his request for approval to use a special computer from a program called "Computers for the Blind."[19]

---

[13]Id. at 6, 9.

[14]Id. at 9.

[15]Id. at 6.

[16]Id. at 7.

[17]Id.

[18]Id. at 10.

[19]Id. at 8.

Plaintiff claims that Woodard had him arrested and placed in Harris County Jail in early May of 2014 "for being out of place getting lost [sic], using a public restroom, etc."[20] Plaintiff remained in the Harris County Jail pursuant to that warrant from May 6 through May 29, 2014,[21] when he was released and given a new ankle monitor by Woodard.[22] Plaintiff claims that the new ankle monitor did not work and that, although he was given another ankle monitor by Defendant Cooper, it did not work either.[23]

On June 14, 2014, a pre-revocation warrant was issued by the TDCJ Parole Division after Plaintiff cut off his ankle monitor and absconded.[24] The warrant was executed after Plaintiff was found in New Haven, Connecticut, on August 15, 2014.[25] On May 19, 2015, Plaintiff was returned to TDCJ custody and his parole was subsequently revoked.[26] Plaintiff remains incarcerated in TDCJ.

---

[20]Amended Complaint, Docket Entry No. 21, p. 7.

[21]Valdez Affidavit, Exhibit C to Defendants' Partial Motion to Dismiss, Docket Entry No. 25-3, p. 5.

[22]Amended Complaint, Docket Entry No. 21, p. 8.

[23]Id.

[24]Valdez Affidavit, Exhibit C to Defendants' Partial Motion to Dismiss, Docket Entry No. 25-3, p. 5; Texas Board of Pardons and Paroles Report, Exhibit 21 to Original Complaint, Docket Entry No. 1-21, pp. 1, 9-10.

[25]Valdez Affidavit, Exhibit C to Defendants' Partial Motion to Dismiss, Docket Entry No. 25-3, p. 5.

[26]Id.

Plaintiff's Amended Complaint challenges the conditions of his release on parole between December 31, 2013, and June 14, 2014.[27] Plaintiff contends that he was denied the ability to practice his sincerely held religious beliefs during his half-way house confinement in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq., and that he was also subject to unconstitutionally cruel conditions of parole that did not accommodate his disability as an elderly blind person in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").[28] Plaintiff reportedly filed grievances concerning these and other issues with Wagley, Owens, and Livingston, but received no response and no resolution.[29] Plaintiff claims he was therefore denied the right to petition for redress of grievances.[30] Plaintiff seeks injunctive relief as well as nominal monetary and punitive damages.[31]

Defendants have filed a Partial Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(1) and 12(b)(6), arguing as follows: (1) Plaintiff's RLUIPA claim must be dismissed because

---

[27]Amended Complaint, Docket Entry No. 21, pp. 5-9.

[28]Id. at 10-11.

[29]Id. at 7, 9-10.

[30]Id. at 10.

[31]Id. at 11.

relief is not available against individual officials and monetary damages are not authorized by this statute; (2) Plaintiff's claims for injunctive relief against Owens, Livingston, and Cooper are barred for lack of Article III standing; (3) Plaintiff's claims for injunctive relief against the remaining defendants are moot because he is no longer on parole; (4) Plaintiff's claims for monetary damages against the defendants in their official capacities as state employees are barred by the Eleventh Amendment; (5) to the extent that any claim pertains to Plaintiff's release or revocation of parole, Owens is entitled to absolute immunity; (6) claims that arose more than two years before Plaintiff filed his Original Complaint are barred by the statute of limitations; (7) Plaintiff has failed to allege an actionable claim under the ADA or the RA; and (8) qualified immunity bars Plaintiff's claims for monetary damages under 42 U.S.C. § 1983.[32] Defendants have also filed two motions for a protective order from discovery, arguing that Plaintiff has made requests for documents that are irrelevant or overbroad and that discovery should be stayed.[33]

Plaintiff has filed a response to Defendants' Partial Motion to Dismiss,[34] and he has also filed a request for leave to further

---

[32]Defendants' Partial Motion to Dismiss, Docket Entry No. 25, pp. 7-23.

[33]See Defendants' Motion for Protective Order, Docket Entry No. 37, pp. 4-9; Defendants' Motion for Protective Order, Docket Entry No. 38, pp. 3-9.

[34]See Plaintiff's Reply to Defendants' Partial Motion to Dismiss (Under Rule 12 Fed. R. Civ. P.), Docket Entry No. 35.

amend his Amended Complaint.[35] The proposed First Supplemental
Amended Complaint submitted by Plaintiff repeats many of the same
factual allegations, but withdraws all claims for monetary relief.[36]
He proposes a new theory of supervisory liability for failure to
train the parole officers assigned to monitor his release, and he
also appears to add a claim that all of the named individual
defendants have retaliated against him or engaged in an "abuse of
power" as "retribution" for exercising his constitutional rights as
a writ writer during class action litigation formerly pending in
this court.[37] He also seeks leave to substitute as defendants David
Gutierrez, who succeeded Owens as the current Chairperson for the
Texas Board of Pardons and Paroles, and Bryan Collier, who
succeeded Livingston as TDCJ Executive Director.[38]

Plaintiff's request for leave to substitute Gutierrez and
Collier will be granted pursuant to Rule 25(d) of the Federal Rules

---

[35]Plaintiff's Motion for Leave, Docket Entry No. 36, which
includes a proposed First Supplemental Amended Complaint (with
Motion for Leave to File and Supporting Brief) ("First Supplemental
Amended Complaint"), Docket Entry No. 36-1, pp. 3-25.

[36]Plaintiff's First Supplemental Amended Complaint, Docket
Entry No. 36-1, pp. 23-24.

[37]Id. at 3, 4-5, 24 (referencing Ruiz v. Estelle, Civil
No. H-78-987 (S.D. Tex.), and Guajardo v. Estelle, Civil No. H-71-
570 (S.D. Tex.).

[38]Plaintiff's Motion for Substitution, Docket Entry No. 34,
p. 1. Plaintiff identifies Owens' successor as David "Guitterez,"
but public records confirm that his name is spelled "Gutierrez."
For purposes of accuracy, the court will refer to Owens' successor
as David Gutierrez.

of Civil Procedure, which provides that when a public officer is
sued in his official capacity, his successor "is automatically
substituted as a party." To the extent that Plaintiff has filed a
motion requesting leave to file pleadings in excess of page limits
imposed by the Western District, that motion is moot and will not
be addressed further. Plaintiff's motion for leave to further
amend his Amended Complaint will be denied for reasons explained
after the court has addressed Defendants' Partial Motion to
Dismiss.

## II. <u>Defendants' Partial Motion to Dismiss</u>

### A. Standard of Review

Defendants have filed a motion to dismiss a portion of this
case under Rule 12(b)(1) of the Federal Rules of Civil Procedure
for lack of subject matter jurisdiction. "A case is properly
dismissed for lack of subject matter jurisdiction when the court
lacks the statutory or constitutional power to adjudicate the
case." <u>Smith v. Regional Transit Authority</u>, 756 F.3d 340, 347 (5th
Cir. 2014) (citation and internal quotation marks omitted). "In
considering a challenge to subject matter jurisdiction, the
district court is free to weigh the evidence and resolve factual
disputes in order to satisfy itself that it has the power to hear
the case." <u>Id.</u> (citation and internal quotation marks omitted).

Defendants also invoke Rule 12(b)(6) in support of their
Partial Motion to Dismiss. Motions to dismiss under Rule 12(b)(6)

are appropriate where the plaintiff's complaint fails to state a claim upon which relief can be granted. Federal pleading rules require only "a short and plain statement of the claim" showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a). As the Supreme Court has emphasized, Rule 8 does not require "heightened fact pleading of specifics," Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007), or "detailed factual allegations." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). To satisfy Rule 8, however, a plaintiff plainly must lodge "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." Id. (quoting Twombly, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (alteration in original).

As a pro se litigant Plaintiff's pleadings are entitled to a liberal construction, meaning they are subject to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 92 S. Ct. 594, 596 (1972). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 127 S. Ct. at 1965). "When considering a motion to dismiss, the court accepts as true the well-pled factual

-11-

allegations in the complaint, and construes them in the light most favorable to the plaintiff." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002) (citation omitted). By contrast, courts are not bound to accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or legal conclusions couched as factual assertions. Iqbal, 129 S. Ct. at 1949; see also Taylor, 296 F.3d at 378 ("[R]egardless of whether the plaintiff is proceeding pro se or is represented by counsel, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'").

## B.   Statute of Limitations

The court turns first to Defendants' contention that any claims that arose more than two years before Plaintiff filed his Original Complaint are barred by the statute of limitations.[39] Claims of the sort filed by the Plaintiff are governed by the two-year statute of limitations provided by Texas law. See Piotrowski v. City of Houston, 237 F.3d 567, 576 (5th Cir. 2001); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). The incidents that Plaintiff complains of appear to have occurred, if at all, between December 31, 2013, when he was placed on parole, and June 14, 2014, when he absconded from parole. Plaintiff had two years from the

---

[39]Defendants' Partial Motion to Dismiss, Docket Entry No. 25, pp. 13-15.

time that his claims accrued to file a complaint concerning these incidents. See Gonzalez v. Wyatt, 157 F.3d 1016, 1020 (5th Cir. 1998).

Although the Original Complaint was received for filing in the Western District of Texas on May 4, 2016, the prison mailbox rule applies because Plaintiff was incarcerated at that time.[40] Under this rule, a pro se prisoner's petition or complaint is deemed "filed" when it is delivered to prison officials for mailing to the district court. See Spotville v. Cain, 149 F.3d 374, 376-78 (5th Cir. 1998) (relying on the mailbox rule established by Houston v. Lack, 108 S. Ct. 2379 (1988), and Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995)). Plaintiff executed his Original Complaint in this case on April 24, 2016, indicating that he placed it in the prison mail system on that date.[41] All claims that accrued before April 24, 2014, are therefore untimely and must be dismissed.[42] See Gartell v. Gaylor, 981 F.2d 254, 256 (5th Cir.

---

[40]Original Complaint, Docket Entry No. 1, p. 1.

[41]Id. at 5.

[42]Plaintiff argues that by eliminating his claim for monetary damages a four-year statute of limitations applies. See First Supplemental Amended Complaint, Docket Entry No. 36-1, p. 5. He provides no support for his contention and the Fifth Circuit has rejected this argument. See Walker v. Epps, 550 F.3d 407, 412 (5th Cir. 2008) (concluding that the statute of limitations applicable to claims under § 1983 applies with equal force to a complaint seeking only prospective injunctive or equitable relief); see also Pittman v. Connerly, 405 F. App'x 916, 918-19, 2010 WL 5298175, at *1-2 (5th Cir. 2010) (unpublished) (concluding that a prisoner's
(continued...)

1993).  This would include all claims concerning the conditions of release imposed on December 31, 2013, and the conditions of Plaintiff's confinement while he was housed at the STTC. Defendants' Partial Motion to Dismiss on this basis will be granted.

## C.  Plaintiff's RLUIPA Claims

Plaintiff alleges that the restrictive conditions of parole imposed on his release from prison have interfered with the practice of his religious beliefs because he was not allowed to smoke a ceremonial pipe or pray outside.[43]  The RLUIPA, 42 U.S.C. §§ 2000cc, et seq., "protects institutionalized persons who are unable to freely attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 125 S. Ct. 2113, 2122 (2005).  Defendants argue that Plaintiff's claims under the RLUIPA must be dismissed because relief is not available from them in their individual capacities.[44]  Defendants argue, moreover, that monetary damages are not authorized by RLUIPA.[45]

---

[42](...continued)
claim was time-barred by the Louisiana one-year statute of limitations that applied to § 1983 cases even though he only sought injunctive relief).

[43]Amended Complaint, Docket Entry No. 21, p. 9.

[44]Defendants' Partial Motion to Dismiss, Docket Entry No. 25, p. 7.

[45]Id. at 8.

-14-

Both of Defendants' arguments are well taken. The Fifth Circuit has concluded that "an action under RLUIPA does not exist for individual-capacity claims[.]" <u>Sossamon v. Lone Star State of Texas</u>, 560 F.3d 316, 329 (5th Cir. 2009), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Sossamon v. Texas</u>, 131 S. Ct. 1651 (2011). The Fifth Circuit has also recognized that the RLUIPA does not create a cause of action for monetary damages against the state or state employees in their official capacities. <u>See</u> <u>DeMoss v. Crain</u>, 636 F.3d 145, 151 (5th Cir. 2011); <u>see</u> <u>also</u> <u>Sossamon</u>, 131 S. Ct. at 1663 (concluding that "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver"). Therefore, Defendants' Partial Motion to Dismiss the RLUIPA claims filed against them in their individual capacities and the claims for monetary damages against them in their official capacities will be granted.

## D. Claims for Prospective Injunctive Relief

Plaintiff seeks injunctive relief from the restrictive conditions of parole that were imposed upon his release from prison on the grounds that these conditions interfered with the practice of his religious beliefs, aggravated his medical condition, and failed to accommodate his disability. Defendants argue that Plaintiff lacks the requisite standing under Article III of the United States Constitution to seek prospective injunctive relief

-15-

from Owens, Livingston, and Cooper because these individuals have retired or have left state service and are no longer in a position to change any policy that may be implicated by Plaintiff's claims.[46] In support of this argument Defendants present evidence that Owens retired as Chairperson of the Texas Board of Pardons and Paroles on September 11, 2015;[47] Livingston retired as Executive Director of the TDCJ on August 31, 2016;[48] and Cooper resigned from his position as a parole officer on October 31, 2016.[49]

Under Article III of the United States Constitution, the jurisdiction of federal courts is limited to "[c]ases" or "[c]ontroversies." U.S. CONST. ART. III, § 2. To establish a case or controversy sufficient to vest a federal court with jurisdiction, a plaintiff must satisfy the following three criteria: (1) they must show that they have suffered, or are about to suffer, an "injury in fact"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the

---

[46]Defendants' Partial Motion to Dismiss, Docket Entry No. 25, pp. 8-10.

[47]Declaration of Business Records by Christy McClain, Exhibit A to Defendants' Partial Motion to Dismiss, Docket Entry No. 25-1, p. 2.

[48]Affidavit of Jason Tucker, Exhibit B to Defendants' Partial Motion to Dismiss, Docket Entry No. 25-2, p. 2.

[49]Declaration of Business Records by Christy McClain, Exhibit D to Defendants' Partial Motion to Dismiss, Docket Entry No. 25-4, p. 2.

injury will be redressed by a favorable decision." <u>Lujan v. Defenders of Wildlife</u>, 112 S. Ct. 2130, 2136-37 (1992).

Defendants note that Thunderhorse cannot meet these requirements as to Owens, Livingston, and Cooper because these officials are no longer in a position to afford redress or enforce the injunctive relief sought.[50] Because it is undisputed that these Defendants are no longer employed in an official capacity by the state, Plaintiff lacks standing to bring claims for injunctive relief against them. <u>See</u> <u>Okpalobi v. Foster</u>, 244 F.3d 405, 426-27 (5th Cir. 2001) (explaining that there can be no actionable case or controversy against defendants who have no power to redress the asserted injuries).

Plaintiff has requested leave to substitute Gutierrez and Collier as the officials who have succeeded Owens as Chairperson of the Texas Board of Pardons and Paroles and Livingston as Executive Director of TDCJ.[51] Defendants respond that Plaintiff's claims for injunctive relief are moot because Plaintiff is no longer on parole or subject to any of the conditions of supervised release that are implicated by his claims.[52] As a result, his claims for injunctive relief fail to present the requisite live case or controversy and

---

[50]Defendants' Partial Motion to Dismiss, Docket Entry No. 25, p. 9.

[51]Plaintiff's Motion for Substitution, Docket Entry No. 34.

[52]Defendants' Partial Motion to Dismiss, Docket Entry No. 25, pp. 10-11.

do not establish jurisdiction for purposes of Article III.[53]  See, e.g., Williams v. Ballard, 466 F.3d 330, 334 (5th Cir. 2006) (per curiam) (concluding that claims for injunctive relief from restrictive conditions of parole were moot once the plaintiff was no longer subject to the complained of conditions).

All of the complained of conditions of release described in the Amended Complaint concern issues that arose while Plaintiff was on parole from December 31, 2013, through June 14, 2014.[54]  To the extent that Plaintiff seeks injunctive relief in the form of accommodations for his religious beliefs and his physical limitations, his allegations no longer present a live controversy because he is no longer subject to the conditions that he complains of and there is no apparent prospect for his release on parole in the foreseeable future.  As a result, Plaintiff's claims for injunctive relief against all Defendants are moot and must be dismissed for lack of subject matter jurisdiction.  See Goldin v. Bartholow, 166 F.3d 710, 717 (5th Cir. 1999) ("A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents.") (citation omitted).  The Defendants' Partial Motion to Dismiss on this ground will be granted.

---

[53]Id.

[54]Amended Complaint, Docket Entry No. 21, pp. 10-11.

E.    Eleventh Amendment Immunity

Defendants argue that Plaintiff's claims for monetary damages against the defendants in their official capacities as state employees are barred by the Eleventh Amendment.[55] "Unless expressly waived, the Eleventh Amendment bars an action in federal court by, inter alia, a citizen of a state against [his] own state, including a state agency." Martinez v. Texas Dep't of Criminal Justice, 300 F.3d 567, 574 (5th Cir. 2002) (citations omitted). As state agencies, TDCJ and the Texas Board of Pardons and Paroles are immune from a suit for money damages under the Eleventh Amendment. See Talib v. Gilley, 138 F.3d 211, 213 (5th Cir. 1998). It is also settled that the Eleventh Amendment bars a recovery of money damages under 42 U.S.C. § 1983 from state employees in their official capacity. See Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2001). Because all of the complained of actions occurred while the individual defendants were employed by a state agency, the court will grant Defendants' Partial Motion to Dismiss Plaintiff's request for monetary damages against them in their official capacity.[56]

---

[55]Defendants' Partial Motion to Dismiss, Docket Entry No. 25, pp. 11-12.

[56]There is a narrow exception to Eleventh Amendment immunity where claims for injunctive relief are concerned. See Aguilar v. Texas Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing Ex parte Young, 28 S. Ct. 441 (1980)). Plaintiff cannot recover injunctive relief in this instance because, as outlined above, those claims are moot.

**F.   Absolute Immunity**

To the extent that Plaintiff's claims pertain to his placement on parole or the imposition of the conditions of his supervised release, Defendants argue that Owens is entitled to absolute immunity for any role she may have had in that process.[57]  It is well established that parole board members and parole commissioners are entitled to absolute immunity from liability for conduct undertaken when performing adjudicative or decision-making functions, such as imposing parole conditions.  See Hulsey v. Owens, 63 F.3d 354, 356 (5th Cir. 1995).  Plaintiff's claims against Owens (and those against Gutierrez as her successor) fail for this reason and will be dismissed.

**G.   Claims Under the ADA/RA**

Defendants argue that Plaintiff has failed to allege an actionable claim against them under the pertinent provisions of the ADA or the RA.[58]  Because the statutory language of the ADA tracks the language found in the RA, jurisprudence interpreting either one is applicable to both.  See Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000) (comparing Title II of the ADA and Section 504 of the RA).  To state a claim under these statutes, a plaintiff must show that:   (1) he is a qualified individual with a disability;

_____

[57]Defendants' Partial Motion to Dismiss, Docket Entry No. 25, pp. 12-13.

[58]Id. at 14-17.

-20-

(2) he was excluded from participation or denied meaningful access to services, programs, and activities, or that he was otherwise discriminated against by the defendants; and (3) he was so excluded or discriminated against by reason of his disability. <u>See Lightbourn v. County of El Paso</u>, 118 F.3d 421, 428 (5th Cir. 1997); <u>see also</u> <u>Hainze</u>, 207 F.3d at 799. Intentional discrimination is required in order to recover compensatory damages under the ADA and RA. <u>See</u> <u>Delano-Pyle v. Victoria County</u>, 302 F.3d 567, 574 (5th Cir. 2002).

Defendants correctly note that there is no individual liability for claims under the ADA or the RA.[59] <u>See</u> <u>Lollar v. Baker</u>, 196 F.3d 603, 608-09 (5th Cir. 1999); <u>see also</u> <u>Decker v. Dunbar</u>, 633 F. Supp. 2d 317, 357 (E.D. Tex. 2008), <u>aff'd</u> 358 F. App'x 509, 2009 WL 5095139 (5th Cir. 2009), <u>cert. denied</u>, 131 S. Ct. 96 (2010). Thus, the ADA/RA claims against the Defendants in their individual capacity must be dismissed.

To the extent that Plaintiff seeks monetary damages from Defendants in their official capacity, Defendants argue that Plaintiff fails to state a valid claim because he does not allege facts showing that any of the Defendants harbored a subjective intent to discriminate against him on account of a disability.[60] Absent facts showing that any of the Defendants intentionally

---

[59]<u>Id.</u> at 14-15.

[60]<u>Id.</u> at 15-16.

imposed unduly restrictive conditions of parole due to Plaintiff's disability, he does not establish liability for monetary damages in an official capacity under the ADA or RA.

Plaintiff also requests injunctive relief. For reasons outlined above, however, Plaintiff does not demonstrate that injunctive relief is available under the ADA or RA because he is no longer on parole or subject to any of the conditions that he complains of in the Amended Complaint. Defendants' Partial Motion to Dismiss these claims will be granted.

## H. Qualified Immunity

Defendants argue that qualified immunity bars Plaintiff's claims for monetary damages against them in their individual capacity under 42 U.S.C. § 1983.[61] Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. See Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 106 S. Ct. 1092, 1096 (1986). A plaintiff seeking to overcome qualified immunity must plead facts showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted).

--------

[61]Defendants' Partial Motion to Dismiss, Docket Entry No. 25, pp. 18-23.

Although "[t]he generic pleading requirements of [Rule 8] govern suits against individual defendants in their official capacity," the Fifth Circuit has clarified that "[p]laintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citing Anderson v. Pasadena Indep. Sch. Dist., 184 F.3d 439, 443 (5th Cir. 1999)). "This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to a constitutional violation." Id. (citing Baker v. Putnal, 75 F.3d 190, 194 (5th Cir. 1996)).

### 1.  Supervisory Officials

Plaintiff has sued Owens and Livingston, who have been succeeded by Gutierrez and Collier, in their capacity as supervisory officials with the Texas Board of Pardons and Paroles and the TDCJ, respectively.[62]  Wagley is also sued in her capacity as a supervisory official in charge of the District 4 Parole Office in Houston.[63]  Plaintiff alleges that these supervisory officials are liable for failing to afford "some form of official grievance mechanism where parolees can petition the government for redress of grievances" and, as a result, he was denied "reasonable

---

[62]Amended Complaint, Docket Entry No. 21, p. 2.

[63]Id.

accommodations" for his disability as well as his religious preferences while on parole.[64]

"Supervisory officers . . . cannot be held liable under § 1983 for the actions of subordinates . . . on any theory of vicarious liability." <u>Alton v. Texas A&M Univ.</u>, 168 F.3d 196, 200 (5th Cir. 1999); <u>see</u> <u>also</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (characterizing supervisory liability as a "misnomer" because government officials are not liable vicariously for the misdeeds of others and are only liable for their own misconduct). To establish liability on the part of a supervisory official under § 1983 a civil rights plaintiff must establish: (1) personal involvement in a constitutional deprivation, or (2) absent personal participation, that enforcement of a policy or practice implemented by the supervisor caused the alleged deprivation. <u>See</u> <u>Alton</u>, 168 F.3d at 200. To be liable based on a policy or practice the supervisory official must "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation"; or he must know that the system was so deficient as to be unconstitutional and "failed to properly attempt to correct" it, and his inaction must cause the plaintiff's injuries. <u>Thompkins v. Belt</u>, 828 F.2d 298, 304 (5th Cir. 1987).

---

[64]<u>Id.</u> at 3.

A supervisory official may be held individually liable under § 1983 through the enforcement of a policy only "if that official demonstrates a deliberate indifference to constitutionally protected rights." <u>Alton</u>, 168 F.3d at 200 (citing <u>Doe v. Taylor Indep. Sch. Dist.</u>, 15 F.3d 443, 453 (5th Cir. 1994) (en banc)). "The deliberate indifference standard is a high one. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and thus do not divest officials of qualified immunity." <u>Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.</u>, 153 F.3d 211, 219 (5th Cir. 1998).

Plaintiff does not allege facts showing that Owens, Livingston, or their successors had any personal involvement in the alleged violations of his rights. To the extent that Plaintiff blames these supervisory officials for failing to implement an adequate grievance process, he does not allege facts showing that the system in place was inadequate or that these Defendants were otherwise deliberately indifferent to his needs under the circumstances of this case. According to exhibits attached to the Original Complaint, which include an official report of testimony given at Plaintiff's parole revocation proceeding after he returned to TDCJ custody in 2015, Wagley acknowledged that she received grievances or requests to accommodate Plaintiff's disability and his religious preferences at some point while Plaintiff was

confined at the Frontrunner Properties Halfway House, which would have been in April and early May of 2014.[65] Wagley noted, however, that Plaintiff absconded from parole on June 14, 2014, before anything could be done.[66] Under the chronology outlined by Plaintiff, he has not demonstrated that the grievance process or any other policy implemented by the supervisory officials was constitutionally inadequate.[67] Therefore, the supervisory officials (Owens, Livingston, and Wagley) are entitled to qualified immunity from the claims asserted against them in their personal capacity.

### 2. Parole Officers: Woodard and Cooper

Plaintiff appears to allege that Cooper and Woodard violated his rights by giving him defective ankle monitors in June of 2014, and by requiring him to comply with strict conditions of release that failed to accommodate his disability or honor his religious preferences while he was on parole.[68] Plaintiff appears to allege further that Woodard violated his constitutional rights by issuing

---

[65]Texas Board of Pardons and Paroles Report, Exhibit 21 to Original Complaint, Docket Entry No. 1-21, p. 10.

[66]Id. at 11.

[67]As Defendants note, moreover, there is no right to have grievances resolved to a prisoner's satisfaction. See Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); see also Staples v. Keffer, 419 F. App'x 461, 463 (5th Cir. 2011) (commenting that "a prisoner does not have a constitutional right to a grievance procedure at all").

[68]Amended Complaint, Docket Entry No. 21, pp. 6-9.

a pre-revocation warrant in early May of 2014 for failing to comply with the restrictive conditions of his parole, which was ultimately revoked in 2015.[69]

To the extent that Plaintiff alleges that his ankle monitors were defective or that his parole was revoked improperly as a result of anything the parole officers did or did not do, these allegations are barred by Heck v. Humphrey, 114 S. Ct. 2364, 2372 (1994) (holding that a claim for damages bearing a relation to a conviction or sentence of confinement that has not been invalidated by a state tribunal or a federal habeas corpus court is not actionable under 42 U.S.C. § 1983). See Littles v. Board of Pardons and Paroles Div., 68 F.3d 122, 123 (5th Cir. 1995) (per curiam) (holding that allegations calling into question the "fact or duration of parole" are barred by the rule in Heck) (citing Jackson v. Vannoy, 49 F.3d 175, 177 (5th Cir. 1998)).

Likewise, to the extent that Plaintiff claims that Cooper and Woodard failed or refused to make reasonable accommodations for his disability and his religious preferences, it is evident that his requests for relief were communicated up the chain of command to Wagley, but that Plaintiff absconded from parole on June 14, 2014, before accommodations could be made.[70] Even assuming that a

---

[69]Id. at 7.

[70]Texas Board of Pardons and Paroles Report, Exhibit 21 to Original Complaint, Docket Entry No. 1-21, pp. 9-11 (summarizing testimony by Cooper and Wagley about the accommodations requested by Plaintiff).

violation occurred, Plaintiff does not establish that the parole officers' actions were objectively unreasonable under the circumstances. Because Plaintiff does not allege facts that would overcome their entitlement to qualified immunity, Defendants' Partial Motion to Dismiss the claims against Cooper and Woodard in their personal capacity will be granted.

### III. Plaintiff's Motion to Amend

Plaintiff has filed a Motion for Leave to File Plaintiff's First Supplemental, Amended Complaint.[71] His request is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that leave to amend should be "freely given when justice so requires." FED. R. CIV. P. 15(a)(2). This "generous standard is tempered by the necessary power of a district court to manage a case." Schiller v. Physicians Resource Group Inc., 342 F.3d 563, 566 (5th Cir. 2003). Leave to amend may be denied upon a finding of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the proposed amendment. See id.

This case was filed originally in May of 2016, and Plaintiff has already been granted leave to amend. Plaintiff's proposed First Supplemental Amended Complaint, which is his second attempt to amend his claims, does not cure all of the deficiencies outlined

---

[71]Docket Entry No. 36.

above. He disregards the applicable statute of limitations and includes claims under the RLUIPA, ADA, and RA that are not actionable. Likewise, he abandons his claims for monetary damages and attempts to assert only claims for injunctive relief regarding the conditions of his release on parole. As explained above, such claims are now moot because Plaintiff is no longer on parole, and there appears to be no prospect for such release in the near future.

Plaintiff's attempt to add new claims is also unavailing. To the extent that Plaintiff attempts to add a retaliation claim based on his status as a writ writer in past cases, he does not allege a chronology of events from which retaliation may be plausibly inferred or a retaliatory motive on the part of any individual defendant in this case. See Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); see also Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999). Thus, he does not articulate a valid retaliation claim.

In addition, although Plaintiff proposes a new theory of supervisory liability based on a failure to train and supervise the parole officers who enforced the conditions of his parole, he does not identify any particular training program or allege specific facts showing that it was adopted with deliberate indifference to the health and safety needs of parolees. See, e.g., Brown v. Callahan, 623 F.3d 249, 255 (5th Cir. 2010) (observing that deliberate indifference in this context "normally requires a plaintiff to show a pattern of violations and that the inadequate training or supervision is 'obvious and obviously likely to result in a constitutional violation'") (citation omitted).

Because none of the proposed claims appear viable, Plaintiff's Motion for Leave to File his First Supplemental Amended Complaint will be denied as futile. See Marucci Sports, LLC v. National Collegiate Athletic Ass'n, 751 F.3d 368, 378 (5th Cir. 2014) ("Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile."); Stipling v. Jordan Production Co., LLC, 234 F.3d 863, 873 (5th Cir. 2000) (holding that leave to amend may be denied as futile if the proposed amendment would fail to state a claim upon which relief could be granted).

## IV. Discovery Motions

Defendants seek a protective order from discovery. Defendants object to the following requests by Plaintiff for production of documents that they deem irrelevant:

    (1)    "[A] copy of the entire printed Parole Presentation submitted by Robert Walker, Attorney, Houston, TX on behalf of the Plaintiff in 1990 with all exhibits originally attached to the presentation."

    (2)    "[A] copy of the acceptance documents granting out of state release to his wife Mrs. Ruth Thunderhorse, 201 Church Street, Milltown, IN and copy of the rejection documents from Indian[a] refusing his parole to Indiana."

    (3)    "[C]opies of all printed goodtime [sic] calculation slips issued between 1978 to date."[72]

---

[72]Defendants' Motion for Protective Order, Docket Entry No. 37, p. 4 (quoting Exhibit A, "Plaintiff's First Request for the Production of Documents . . . ," Docket Entry No. 37-1, p. 3).

Defendants also argue that Plaintiff's requests for copies of "any and all policies, rules, memos, emails with TDCJ and BPP division communications concerning the subjects of grievances, disabled releasees and lack of [accommodations] at intermediate sanction facilities" is overbroad.[73]  Defendants also argue that the following requests for production of documents are overbroad, excessive, and improper for other reasons:

> (1)  "[C]opies of all Certificates of Mandatory Supervision, Certificates of Parole each with attached sheet for Conditions of Release."
>
> (2)  "[C]opies of all parole mandatory supervision denials [from] 1978 to date."
>
> (3)  "[C]opies of all [motions], requests and informal grievance resolutions made between 2011 to date with written responses, if any."[74]

Plaintiff has filed a response along with a Motion to Compel Discovery that he has requested in this case.[75]

For reasons set out in the discussion of Defendants' Partial Motion to Dismiss, most if not all of Plaintiff's claims are subject to dismissal, and his proposed First Supplemental Amended Complaint has not cured these deficiencies.  None of the requested

---

[73]Id. at 5.

[74]Defendants' Motion for Protective Order, Docket Entry No. 38, p. 4 (quoting Exhibit A, Plaintiff's Second Request for Production of Documents, Docket Entry No. 38-1, p. 1).

[75]See Plaintiff's Response and Motion to Compel, Docket Entry No. 42; Plaintiff's Pro Se Reply to the Objections and Response of Defendants to the Plaintiff's Request for Production and Inspection, Docket Entry No. 45.

documents appear relevant to the claims remaining in this case, if there are any. Under these circumstances Defendants' requests for a protective order from discovery will be granted, and Plaintiffs' Motion to Compel will be denied. All discovery will be stayed until further notice.

Because it is unclear whether there are any remaining live claims in this case, Plaintiff will be directed to show cause in writing within 30 days of the date of this Memorandum Opinion and Order why this case should not be dismissed. Defendants shall file any reply within 14 days of the date shown on Plaintiff's certificate of service.

## V. Conclusion

Based on the foregoing, the court **ORDERS** as follows:

1.  Defendants Owens, Livingston, Wagley, Woodard and Cooper's Partial Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (Docket Entry No. 25) is **GRANTED**.

2.  Plaintiff Iron Thunderhorse's Motion for Leave to Exceed the Page Limit (Re: Plaintiff's First Supplemental Amended Complaint) imposed by the Western District (Docket Entry No. 33) is **MOOT**.

3.  Plaintiff's Motion for Substitution of Party Defendants Under Rule 25(d) Federal Rules of Civil Procedure (Docket Entry No. 34) is **GRANTED**.

4.  Plaintiff's Motion for Leave to File Plaintiff's First Supplemental, Amended Complaint (Rule 15, Fed. R. Civ. P.) (Docket Entry No. 36) is **DENIED**.

5.  Defendants Owens, Livingston, Wagley, Woodard and Cooper's Motions for Protective Order from

discovery (Docket Entry Nos. 37 and 38) are **GRANTED**. All discovery is **STAYED** until further notice.

6. Plaintiff's Motion to Compel Discovery (Docket Entry No. 42) is **DENIED**.

7. Because it appears that there are no remaining live claims in this case, Plaintiff is directed to show cause in writing within **30 days** of the date of this Memorandum Opinion and Order why this case should not be dismissed. Defendants shall file any reply within **14 days** of the date shown on Plaintiff's certificate of service.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 26th day of January, 2018.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE